UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

QUALITY ASPHALT SEALCOATING, INC.,                    Case No. DT 05-05388
                                                      Chapter 7
        Debtor.                                    Hon. Scott W. Dales

_____/

JAMES W. BOYD,                                        Adversary Pro. No. 07-80626

        Plaintiff,

v.

LYON FINANCIAL SERVICES, INC., d/b/a
U.S. BANCORP BUSINESS EQUIPMENT
FINANCE GROUP,

        Defendant.

_____/

### MEMORANDUM OF DECISION AND ORDER
### REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

PRESENT:     HONORABLE SCOTT W. DALES
                United States Bankruptcy Judge

This matter is before the court on cross motions for summary judgment (the "Motions"). Each Motion seeks a determination that agreed-upon transfers effected by the Debtor-In-Possession ("DIP") post-petition but before conversion of this case to Chapter 7, are either avoidable as unauthorized post-petition transfers or, in contrast, permissible as payments made in the ordinary course of business.

The Motions require the court to construe various pre-petition transactional documents described as a lease, as well as the court's own Definitive Order (DN 3).  In addition, the Motions require the court to give meaning to the authority bestowed upon the DIP to operate its business and enter into transactions in the ordinary course of business as stated in 11 U.S.C. § 1108.

At the heart of the dispute, however, lies the question of whether the supposed pre-petition transaction documents should be characterized as a "true lease" or as a disguised security agreement.

I.      Jurisdiction

The court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334, and the proceeding falls within the court's "core jurisdiction" because it involves matters affecting estate administration, turnover of estate property, validity of liens, an order regarding the use of property of the estate, among other core issues.  See generally, 28 U.S.C. § 157(b)(2).

II.     Summary Judgment Standards

A movant will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits, with all facts and inferences viewed in the light most favorable to the

nonmoving party.  <u>Westfield Insurance Co. v. Tech Dry, Inc.</u>, 336 F.3d 503, 506 (6th Cir. 2003). The court has been faithful to these standards when considering the cross-motions.


III.     <u>Analysis</u>

     A.     <u>Characterizing the Underlying Transaction</u>

The parties evidently agree that the following material facts are not in dispute.  During the Chapter 11 phase of this case, the DIP paid the Defendant a total of $17,738.08. Specifically, the DIP made payments of $8,600.32 and $9,137.76, on account of a Ford Truck (the "Truck") and  a Caterpillar Loader (the "Loader"), respectively.  The operative document is a master lease dated March 20, 2003, with applicable schedules attached thereto (the "Operative Document").[1]  The original acquisition cost for the Truck was $18,025.00.  At no time did the Defendant seek or obtain court approval of any agreement regarding adequate protection as contemplated in 11 U.S.C. § 363(e) and  Federal Rule of Bankruptcy Procedure 4001(d).  Neither the DIP nor the Trustee attempted to reject the supposed leases at any time before March 29, 2007.  <u>See</u> Motion For Relief From Automatic Stay in Favor of Lyon Financial Services, Inc. d/b/a USBancorp Business Equipment Finance Group and for Rejection of Unexpired Lease Agreements (DN 110).  Following the DIP's supposed rejection of the lease and surrender of the leased goods, the Defendant sold the Truck for $11,500.00 and the Loader for $26,244.00, crediting both amounts against the DIP's obligations under the Operative Document.  The Defendant filed Proofs of Claim with respect to each transaction, seeking an unsecured claim in the amount of $20,481.90.

---

[1] One schedule defines the parties' obligations with respect to the Truck and related accessions; the other schedule defines the parties' obligations with respect to the Loader.

3

If the transaction is properly classified as a true lease, then the obligations of the parties with respect to the post-petition transfers would be governed primarily by 11 U.S.C. § 365(d)(5).  Under that section, the Trustee, or in this case the DIP, would be obligated to make lease payments beginning sixty days after the order for relief.  On the other hand, if the transaction is a secured transaction, the payments the DIP made would be in the nature of adequate protection under 11 U.S.C. § 361, and would therefore require court approval pursuant to Federal Rule of Bankruptcy Procedure 4001(b) because (as explained below) the court does not regard post-petition payments on account of secured debt as payments made in the ordinary course of business.

By subscribing to the Operative Document, the parties agreed that Minnesota law should govern this transaction.  The Uniform Commercial Code as enacted in Minnesota provides in relevant part as follows:

(a)  Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.

(b)  A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:

> (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
>
> (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>
> (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>
> (4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

. . .

(d)   Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised. Additional consideration is not nominal if:

(1) when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed; or

(2) when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

(e)   The "remaining economic life of the goods" and "reasonably predictable" fair market rent, fair market value, or cost of performing under the lease agreement must be determined with reference to the fact and circumstances at the time the transaction is entered into.

See MSA § 336.1-203.  As noted above, the parties agreed that during the initial term of the lease, the Debtor was not free to simply surrender possession of either the Truck or the Loader and thereby absolve itself of its rental obligations.  Consequently, because the obligation to make payments on account of the Truck and Loader lasted throughout the term of the lease and was not subject to termination by the DIP, the court finds the first prong of the UCC test is met and as to this prong, the transaction appears to be a disguised security agreement, rather than a true lease. Id.

Once the court determines that the Debtor was obligated to make payments during the term of the lease and was not permitted to terminate this obligation prematurely, the existence of a single additional factor from among those enumerated in the statute would require the court to conclude that the transaction at hand was a disguised financing agreement rather than a true lease.  See MSA § 336.1-203(b).  As to the Loader, the Debtor had the right, at the conclusion of the initial term, to acquire the remaining economic interest in the leased goods

for nominal consideration.  MSA 330.1-203(b){4) and (d).  On this question, even considering the standards applicable under Rule 56, the court has no difficulty in concluding that the $1.00 buyout for the Loader is, in the words of Professors White and Summers, "[t]he most nominal of consideration."   4 White and Summers, *Uniform Commercial Code* § 30-3 (5th ed.). Accordingly, with respect to the Loader, the court concludes that the Operative Document is, in fact, a disguised financing agreement.

Whether the consideration to acquire the Truck at the end of the lease term is nominal presents a slightly more difficult question.  The parties agreed that at the conclusion of the Truck's lease term, the DIP had three options.  First, the DIP could surrender the Truck without further obligation.  Second, the DIP could pay the Defendant ten percent (10%) of the original acquisition cost which the record establishes as $1,802.50.  Third, the DIP could renew the lease and thereby obligate itself to make payments of $10,298.64 during the remaining year.  See Brief in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment, at Exh. 6 (DN 23-6).

Applicable law, specifically MSA § 330.1-203(d), calls upon the court to consider the practical choices confronting the Debtor at the conclusion of the lease term (but viewed  from the outset of the transaction).  With respect to the Truck, the statute obligates the court to compare the cost of the buyout option of $1,802.50, with the $10,298.64 cost of continued performance under the renewed term.   In the words of the statute, the consideration is nominal "if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised."  MSA § 330.1-203(d).  Here, it plainly appears that the cost of continued performance far outweighed the Debtor's cost of acquisition at the

6

conclusion of the initial term. Therefore, the court finds the DIP had the opportunity to acquire the economic interest in the Truck for nominal consideration at the conclusion of the initial term. No rational fact-finder could find otherwise. [2]

The Defendant argues that the court cannot re-characterize the transaction as a secured transaction because the DIP was in default at the end of the lease term, and was not permitted to exercise any buyout option, nominal or otherwise, as a matter of historical fact. The court rejects this argument principally because applicable law requires the court to determine the nature of the transaction at its inception, hypothesizing compliance with the lease terms throughout the term of the lease. MSA § 330.1-203(e); White and Summers, *infra*. Viewing the transaction at the start, no reasonable fact-finder could conclude under applicable law that the transaction qualifies as a true lease rather than a disguised financing transaction.

According to the Defendant, however, the court has already decided that the Operative Documents gave rise to a true lease because the court granted the Defendant's motion to compel the Trustee to reject the leases under 11 U.S.C. § 365, and that relief suggests that the court treated the transaction as a true lease. In addition, Defendant contends that the Trustee should be estopped from seeking to re-characterize the transaction because he failed to oppose

---

[2] The court also notes that undisputed facts also establish that at the conclusion of the lease, post-default, the supposed lessor treated the DIP and the putatively leased goods just as a secured creditor would have treated an Article 9 debtor and its collateral. Specifically, the Defendant sold the Truck and Loader, applied their proceeds against the Debtor's obligation, and sought payment for the resulting deficiency, precisely in the manner prescribed in the Article 9 default provisions. See MSA §336.9-608. The Defendant's application of the proceeds of disposition of the Truck and Loader seems infinitely more consistent with title remaining in the DIP after a sale and secured financing, rather than title remaining in the Defendant at the conclusion of a lease. The court's decision on these cross-motions, however, does not depend on the facts surrounding the disposition of the goods, but instead on its conclusion that the end-of-lease consideration was "nominal" within the meaning of the UCC.

the motion to reject the supposed leases.  The court rejects this aspect of the  Defendant's argument regardless of whether it sounds in collateral estoppel, judicial estoppel, or laches.

The doctrine of collateral estoppel does not bar re-litigation of the "true lease" issue because the Trustee did not actually litigate the issue.  Instead, the court simply entered the order without opposition.  For collateral estoppel or issue preclusion to apply, the parties or their privies must have actually litigated the issue, which did not happen here, since the Trustee took no position and simply suffered the entry of the order compelling rejection.  See generally, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979).

With respect to laches or estoppel, it is worth noting that the transfers at issue occurred well before the court entered its order compelling lease rejection, so the Defendant cannot show any prejudicial reliance on the order.  Laches depends not only on delay, but delay plus prejudice.  Indeed, at oral argument Defendant's counsel acknowledged that the Defendant's disposition of the Truck and Loader after default conformed with the practice of lessors generally under the circumstances and, as the court has already noted, also conformed with the practice of secured parties under Article 9 of the UCC.  Because the order compelling the Trustee to reject the supposed lease and surrender the property did not affect the manner of Defendant's disposition, the Defendant cannot show prejudice.

As for judicial estoppel, Defendant has not shown that the Trustee was playing "fast and loose" with the positions he advanced before the court, or that the Trustee prevailed after doing so, at least not with respect to the lease re-characterization issue.  The court, therefore, perceives no need to invoke the doctrine of judicial estoppel to protect the integrity of the courts.  See Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002).

To summarize, the Operative Document gave rise to a secured transaction, not a true lease, and no rational fact-finder could conclude otherwise.

B.      Characterizing the Payments

Given the court's conclusion that the underlying transaction was not a true lease, the post-petition transfers cannot qualify as lease payments.  Therefore, the transfers were in the nature of adequate protection.  The parties agree that the Defendant perfected its *de facto* security interest in the Truck and Loader, so the question becomes whether these adequate protection payments on account of a perfected security interest were authorized by the Code or the court.  See 11 U.S.C. § 549.

Defendant cites In Re Ford, 61 B.R. 913 (Bankr. W.D. Wis. 1986), for the principle that a debtor-in-possession may make adequate protection payments to a secured creditor in the ordinary course of business, without specific authority from the court, because such payments are made in the ordinary course of business.  The court does not agree.  First, the nature of the bankruptcy proceeding, the principle of equality of distribution, and the well-established concept that the order for relief constitutes a cleavage between pre-petition transactions and post-petition transactions, make the court reluctant to extend Ford beyond the facts of that case.  It is, of course, tempting to harmonize the Bankruptcy Code's treatment of lessors and secured creditors, as Ford does as a practical matter, but the Bankruptcy Code, for good or ill, treats lessors and secured creditors differently.  Certain lessors, including lessors of personal property, are automatically entitled to lease payments under specified conditions, 11 U.S.C. § 365(d)(5), yet there are no such automatic payment rights for secured creditors.  Indeed, if a secured creditor does not request adequate protection, the secured creditor is not entitled to

9

it. See 11 U.S.C. § 363(e); In re Kain, 86 B.R. 506 (Bankr. W.D. Mich. 1988). A DIP that leases goods must pay for continued possession at the bargained-for price, pending assumption or rejection. A DIP that owns goods subject to a lien, in contrast, need only guard against diminution in value, and then only in the amount the court determines is necessary to accomplish this goal. For that matter, to the extent an equity cushion protects secured creditors from collateral diminution, such creditors may not have any right to adequate protection payments in the ordinary course of business. The Defendant neither sought nor obtained formal adequate protection of its interests.

Second, by entering the Definitive Order, the court forbade the Debtor from making any payments on account of pre-petition debt (except other claims not relevant here). This fact makes Ford and similar authorities distinguishable. Consequently, Defendant's reliance on the ordinary course of business language contained in Sections 363 and 1108 is misplaced. The authority to use estate property in the ordinary course is contingent not only upon the authority to operate the business under 11 U.S.C. § 1108 (a fact not at issue), but also upon the absence of a court order prohibiting such use. See 11 U.S.C. § 363(c)(1) (authorizing trustee or debtor in possession to use property in the ordinary course of business "unless the court orders otherwise"). In the present case, when the court entered its Definitive Order, the court did "order otherwise" by specifically prohibiting the DIP from using property of the estate to pay most prepetition claims, including the Defendant's claim. See Definitive Order, April 19, 2005 (DN 3).

It plainly appears the DIP and the Defendant had an informal agreement regarding adequate protection. Otherwise, the DIP would not have made the payments at issue. It also

10

appears, however, that neither the DIP nor the Defendant sought approval of the agreement as contemplated by Federal Rule of Bankruptcy Procedure 4001(d) or 11 U.S.C. § 363(e).  In the face of the Definitive Order, which forbade post-petition payments on pre-petition debts, such approval was a necessary condition to the DIP's authority to pay the Defendant.  The court believes it is unwise to cede to a debtor-in-possession discretion to make indefeasible adequate protection payments, without court approval.  The pressures on a debtor-in-possession are too great to countenance such authority, which explains the court's Definitive Order and probably Fed. R. Bankr. P. 4001(d) (governing motions to approve agreements relating to adequate protection and other stay-related issues).  Without obtaining court approval of the payments, the Defendant assumed the risk that a Trustee would seek to avoid and recover the post-petition payments.

The payments at issue were not authorized by the Code or the Court.  Accordingly, the Trustee is entitled to avoid and recover the transfers in the amount of $17,738.08 with respect to the Truck and Loader under 11 U.S.C. § 549 and 550 respectively.  For the foregoing reasons, the Trustee prevails, and the court will enter a separate judgment memorializing this outcome as Fed. R. Bankr. P. 9021 requires.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order Regarding Cross-Motions for Summary Judgment, and the court's separate

11

judgment, upon James W. Boyd, Esq., Troy W. Stewart, Esq., Lyon Financial Services, Inc., and

Kevin N. Summers, Esq. pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4

Date: May 27, 2009

Scott W. Dales
United States Bankruptcy Judge